

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2007

# Kirakozov v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5038

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Kirakozov v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1186.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1186

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO.  05-5038

_____


KAREN KIRAKOZOV,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____


Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA No.  A75-698-986
Immigration Judge: Donald V. Ferlise

_____


Submitted Under Third Circuit LAR 34.1(a)
March 26, 2007

Before:  RENDELL, BARRY, and CHAGARES, <u>Circuit Judges</u>.

(Filed:  April 30, 2007)


_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

Appellant Karen Kirakozov contends that an Immigration Judge ("IJ") and the

Board of Immigration Appeals ("BIA") incorrectly denied his applications for asylum,

withholding of removal and relief under the Convention Against Torture ("CAT") based

on his claim that he was persecuted in the Republic of Georgia because of his status as an

ethnic Armenian. We will affirm the rulings of the IJ.[1]

## I.

Kirakozov arrived in the United States on April 28, 1999 as a non-immigrant

visitor. His visa expired on October 27, 1999. In May 2000, Kirakozov filed an

application for asylum and withholding of removal. On or about June 18, 2004,

Kirakozov filed an amended application that included a request, in the alternative, for

voluntary departure.

On July 27, 2004, after an evidentiary hearing, the IJ denied Kirakozov's

applications for relief and ordered him to be removed to Georgia. The IJ determined that

Kirakozov's application for asylum was untimely because it had been filed after the

one-year deadline.[2] The IJ found, further, that Kirakozov had not carried his evidentiary

---

[1] Where, as here, the BIA adopts the ruling of the IJ, without further independent analysis, a court of appeals will review the IJ's decision directly. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

[2] We agree with the IJ that there is no basis for a claim of extraordinary circumstances excusing Kirakozov's delay. Kirakozov testified that he did not file his application because he was not sure if he was going to remain in the United States or if he was going to return home to Tblisi. This is clearly not an extraordinary circumstance.

burden for protection under CAT and withholding of removal, based primarily upon his lack of credibility. The BIA agreed with the IJ that Kirakozov's asylum petition was not timely, and that he had not established that it was more likely than not that he would be persecuted or tortured upon return to Georgia. Accordingly, the BIA affirmed the IJ's ruling.

## II.

Before the IJ, Kirakozov testified as to his life experiences since being a young child attending swimming classes in Georgia, and experiencing discrimination because he was of Armenian descent. He attended Armenian college in Armenia and said he was not able to attend college in Tblisi, Georgia, since he was an Armenian. Later, however, he indicated that he was involved in a university in Tblisi, from 1991 until 1994, thus contradicting himself. He and his brother-in-law opened a small food store in Tblisi in 1994, and members of a nationalist group called the Mkhedrioni would stop by the store and steal items from time to time. They also told Kirakozov to go back to Armenia and made anti-Armenian statements to him. About once a year, they would paint anti-Armenian slogans on the building where the store was located, but Kirakozov never specifically indicated who had painted them.

Kirakozov testified that his brother-in-law was beaten up on the street in front of the store in October 1994, late at night. He was taken to the hospital and later died after being in a coma for a week. However, Kirakozov did not see the attack. He filed a

3

complaint but the police were apparently too afraid to investigate it. In March 1998, his store was destroyed by fire.

Kirakozov testified that he routinely complained to the government about the problems he encountered in Tblisi. He testified that plainclothes police officers picked him up and took him to their headquarters and accused him of being a nationalist. They urged him to sign a document admitting he was a nationalist, but he refused to sign it, and they beat him up and put him in jail overnight. The next day he was beaten and threatened with being sent to prison. He testified to the IJ that the police put criminals in his cell so that they would beat him up and possibly even rape him. However, again, he later contradicted this testimony.

Kirakozov was set free but had promised to return and give police the names of the individuals who were making complaints along with him. However, to avoid doing so, Kirakozov planned to hide at his grandmother's home, but he became ill and was hospitalized for four days. When asked what medical problems were treated at the hospital, he indicated that he had broken bones – namely, a broken rib and a brain concussion. However, in another contradiction, the hospital report that Kirakozov submitted did not mention a broken rib.

Kirakozov testified that he feared that if he returned to Georgia he might be arrested or killed. His wife now lives in Russia. On cross examination, Kirakozov testified that the Mkhedrioni was made up of former thieves who had been set free by the government, but that the group was actually supported by the government. However,

4

documentation submitted by the Attorney General indicated that, in fact, the government is trying to crack down on the Mkhedrioni, rather than support them. *See* Appx. at 560-61. The same document referenced a State Department finding that the Department has no evidence that the Mkhedrioni has mistreated Armenians in Georgia. *Id*. at 561.

The IJ correctly identified several inconsistencies in Kirakozov's story. *First*, Kirakozov's I-589 application does not reference any hospitalization as a result of injuries sustained at the hands of the police, nor did Kirakozov refer to it in his asylum interview. *Second,* Kirakozov testified that he last wrote to the President of Georgia in February of 1999, but in his previously-submitted affdavit, he said that he last wrote to the President at the end of 1998. *Third,* Kirakozov stated that he had not filed his asylum application because he was not sure whether he was going to return to Georgia, but also that he requested asylum because he feared persecution if he went back. *Fourth,* Kirakozov told the IJ that he had come to the United States to learn business practices so as to establish a business when he went back to Tblisi, but then decided that, since he had had problems there in the past and people had been looking for him, he would try to remain in the United States. *Fifth,* the IJ was also skeptical regarding Kirakozov's claims that Armenians were being treated harshly in Georgia, as relevant reference material reflected that the government was actually trying to crack down on the Mkhedrioni and that the State Department had no evidence that the Mkhedrioni had mistreated Armenians in Georgia. Kirakozov offered few documents to corroborate his claims or to allay the IJ's skepticism.

In light of these inconsistencies, the IJ concluded:

> The credibility of the respondent is of extreme importance in assessing his claim. The Court has noted the discrepancies within the respondent's testimony, itself, the times where he has impeached his own testimony by contradicting what he said earlier in the day. The Court has also noted the contradictions between the respondent's testimony and what was testified to before an asylum officer and what is contained in his application for asylum and in his affidavit. For all of the reasons previously cited, the Court finds that the respondent has not been a credible witness and has not provided a troubled case, in chief, to this Court. The Court further notes that the respondent has supplied very little evidence in support, other than his allegations, which the Court deems to be incredible.

Appx. at 60-61.

The BIA affirmed for the reasons set forth in the IJ's decision.

## III.

Our standard of review is highly deferential. We must uphold the IJ's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Indeed, we may not reject these findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

We see no reason to disturb the IJ's findings. Not only can we not say that a reasonable factfinder "would be compelled to conclude to the contrary," we find, in fact, that the IJ's findings are supported by substantial evidence.

Accordingly, we will DENY the petition for review.